[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, whose birth name was Cyr, and the defendant were married on August 12, 1978, in Southbury, Connecticut. It was the second marriage for the defendant husband, who had had three (3) children from his first marriage. The parties share one daughter, Amanda, who was born on December 8, 1986.
The parties testified as to the jurisdictional issues and agreed, after much dispute, concerning the time each would spend with Amanda. That agreement was ratified by the court. Amanda was represented by counsel. Attorney Margaret C. Hollon submitted bills to the parties, and the court orders that those bills be paid in full within thirty (30) days of this judgment. The parties have agreed to a current plan for sharing time with Amanda, and will, have the services of counsel for the minor child, as well as Family Services should the parties be unable to agree on what school she should attend in the fall. The defendant is to pay child support in the amount of One Hundred ($100.00) Dollars per week. This figure takes CT Page 7230 into account that the parties have extensive time with the child, but also considers the income disparity between the parents.
The defendant shall provide medical and dental insurance as provided to him through his place of employment, and shall retain his life insurance policy in the face amount of Fifty Thousand ($50,000.00) Dollars, naming the child as irrevocable beneficially until his obligation to pay support and meet his obligations for post-secondary education are discharged.
The parents shall alternate the tax deduction for the minor child so long as they continue the current pattern of time spent with the child, and so long as the defendant is current in his support obligations for the minor child. The plaintiff shall be entitled to the deductions for the tax year 1995.
From the evidence at trial, the court can find that the parties shared a committment to meet the obligations of support that the defendant had from his first marriage. The defendant paid child support, and contributed to the post-secondary education of two of the three minor children from his first marriage. The plaintiff did not complain about that obligation in her testimony. She had married the defendant knowing what his obligations to his first family were, and continued to work and participate in defendant's life with his children.
The plaintiff was twenty-five (25) when she married the defendant, then age thirty-four (34). The plaintiff received a college degree in business administration prior to the marriage, and was working at Locktite at the time of the marriage. The defendant was employed with Aetna as a comptroller. The plaintiff also has an accounting background.
The parties moved from the Hartford area, requiring the plaintiff to leave her employment there. They relocated to Stamford, and then moved back to Wethersfield. Prior to Amanda's birth, the plaintiff was earning approximately Forty Thousand CT Page 7231 ($40,000.00) Dollars, and the defendant was earning approximately Fifty-two Thousand ($52,000.00) Dollars per year. They had Amanda, and moved to Watertown.
The plaintiff attributed the breakdown of the marriage to the change in the parties' relationship after Amanda's conception. She testified that the defendant was not happy about the prospect of having another child, and insisted that the plaintiff resume her employment after the birth, so that the parties would not face bankruptcy. That issue was complicated by the fact that Amanda was born with a blockage between her kidney and her bladder, requiring surgery within Amanda's first six (6) months of life. The plaintiff complained that the defendant was emotionally unavailable to her and the child. She claimed that the parties had serious conflict concerning her return to work after the birth and surgery.
The plaintiff conceded that the parties were not ever in agreement concerning the expenditure of money. The defendant complained in his testimony that the plaintiff spent too freely, and that managing their debt was difficult. The parties entered into a business in 1988 which was managed by the plaintiff. It was a local fabric business, and allowed the plaintiff to spend time caring for Amanda. The parties obligated themselves with a second mortgage on their home in Watertown. The business, started in 1988, was closed in 1992. The plaintiff had an automobile accident in 1991, which is the subject of litigation. She testified that she has been unable to conduct her drapery business because she has been unable to lift her arms over her head since the accident.
The fabric business was not a success, and the parties were forced to sell the marital home to pay off the second mortgage. The marriage was in serious disarray at this point, and the defendant had lost his employment. The family expenses were being paid with his severence pay, but by 1992 the marriage had broken down. The defendant took a consulting job in California, which kept him there for two weeks at a time. The plaintiff testified that it was then that she experienced how peaceful life could be for her and CT Page 7232 the child. She testified that she was happier without the defendant. The plaintiff and the defendant engaged in some marriage counseling, attended only twice by the defendant, because the plaintiff wanted to be sure that the marriage could not be saved.
The parties continued their conflict with respect to money, leading to some unattractive behavior surrounding purchases by the plaintiff, and then she brought the dissolution action during the Christmas season of 1992. The defendant had been sending his earnings to Connecticut from California, and claimed that he had reduced their line of credit substantially while employed in California. The evidence revealed that the charges during that period by the plaintiff worked to the parties disadvantage, in that the credit line was not reduced despite considerable payments made.
The credit cards were, and continue to be held in the defendant's name alone. Neither party offered any testimony concerning why that was the case. The defendant purchased his stock options with his last full-time employer at the time his employment ended. Four months prior to the institution of this action, the defendant had sixty (60) days within which to exercise his option to purchase stock, and receive an immediate gain. The stock was restricted, however, and could not be sold for a two (2) year period. The defendant had to borrow money from his mother to effect that purchase, because of the value of the investment, and he testified that that was a loan evidenced by a promissory note. The court finds that that note was in fact a loan. While the defendant's mother had given him money in the past, and had partially funded the college educations of two of the defendant's three children from his first marriage, the Nineteen Thousand ($19,000.00) Dollars which allowed him to purchase that stock, and from which the parties achieved that asset, was to be repaid to his mother.
The parties each testified concerning the fabric business which was a failure. The defendant claimed that it was the plaintiff's idea and that he "went along with it." The court finds the plaintiff's CT Page 7233 testimony, that the business was a partnership from which they yeilded [yielded] beneficial tax treatment, more credible. The parties have met the debt, in large part, by selling the marital home in Watertown, which had a substantial second mortgage for the business debt. They shared the tax refunds, and utilized those funds for family expenses, and payment of bills during respective periods of unemployment, so each was given a benefit along with the losses.
The court finds that the remaining assets which are the subject of dispute are the Twenty Thousand (20,000) shares of Universal Holdings as depicted on the defendant's financial affidavit. They have a value of Fifty Thousand ($50,00.00 [$50,000.00]) Dollars. The defendant has an IRA and an annuity which have a total value of Thirty-nine Thousand, Seven Hundred, fifty-three ($39,753.00) Dollars. He claims a "tax effect" on each asset, which the court finds is not appropriate, because the tax effect may not apply. The court is also not charged with the obligation of concern of tax impact when parties fail to agree on the disposition of assets.
The defendant's land in Florida was a premarital asset and is of marginal value and will not be added to the estate for distribution purposes. The plaintiff has property that she purchased during the separation with a loan from her stepfather. That property is not a proper subject for consideration by the court, except to note that she appears to have some ability to acquire property on her own. The only other asset is the plainitiff's [plaintiff's] IRA, which has a value of Three Thousand, Seven Hundred ($3,700.00) Dollars.
This is a long term marriage, and the court finds that the plaintiff wife, during the early stages of her marriage, prior to giving birth to their daughter, did subordinate her career path to that of her husband. She gave up gainful employment to move with him, and was required to do that several times during the early stages of their marriage. She delayed even the contemplation of childbearing so that they might meet his obligations to his first family, and contributed to their financial life, as well as their life as a family CT Page 7234 on a serious level, prior to her giving birth to their daughter. While she may have been frivolous in her spending habits, she was gainfully employed during the majority of the marriage.
The defendant's proposed orders do not take into account the contribution that the plaintiff made in the defendant's ability to maintain assets after his first dissolution. They lost money on a fabric business, but the plaintiff should not bear the exclusive burden of that loss. To require each party to retain assets and liabilities on their respective financial affidavits is not equitable.
In light of the statutory criteria, and a review of all of the evidence adduced at trial, the court orders the following:
1. DEBTS: The parties shall be responsible for the debts on their respective financial affidavits, except for a debt of Nineteen Thousand ($19,000.00) Dollars to the defendant's mother for the purchase of the Universal Holdings stock. They shall be equally responsible for that debt.
2. STOCK IN UNIVERSAL HOLDINGS: The parties shall, after the restriction on the sale of that stock terminates, sell and divide the proceeds equally and be responsible for any tax due on their share. The debt to the defendant's mother shall be repaid from the liquidation of that asset before the proceeds are divided between the parties.
3. IRA'S AND ANNUITY: The defendant shall transfer by Qualified Domestic Relations Order the sum of Ten Thousand ($10,000.00) from his IRA to the plaintiff. The court is contemplating a tax-free transfer. She shall retain her IRA. The court finds that she will have an opportunity to further acquire retirement funds because of the age difference of the parties. The court has taken into account the sums earned by the defendant which retired debt, and his assumption of the remaining debt of the marriage in making this distribution of retirement funds. CT Page 7235
4. ALIMONY: The court finds that the plaintiff is currently earning less than she has the capacity to earn, due in large part to the concessions she made in her employment track to effect the moves required by the defendant's job changes. The court finds that there is a current need for alimony, that is time limited, in that she has the capacity to reengage in the workplace, and due to the fact that she will have time to devote to a career path because of the time dedicated to Amanda's care by defendant. There is a current income disparity. There is also an age difference which will allow the plaintiff the time to further develop her career. While this is a marriage of fifteen (15) years, the court does not find that it is a case which requires permanent alimony. The plaintiff has the ability, with family assistance, to acquire property, and has the ability to be well employed. Her history of employment, and effort at employment is likely to be continued. Therefore, the court finds that the defendant should be responsible for alimony for a period of ten (10) years, or until her remarriage, cohabitation within the contemplation of the statute, or her death. The court finds that that periodic, time-limited alimony currently should be paid at the rate of Eighty ($80.00) Dollars per week. The order is subject to modification as to amount only.
5. TAX DEDUCTIONS FOR THE MINOR CHILD: The defendant shall be entitled to claim the minor child, Amanda, as a deduction for Internal Revenue Service purposes, so long as he is current on orders of this court.
6. ATTORNEYS FEES: The parties shall be responsible for their respective attorneys fees. Neither party has liquid assets from which to pay an award of attorneys fees.
A judgment of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage, and with all other orders consistent with this memorandum of opinion.
/s/ Dranginis DRANGINIS, J. CT Page 7236